You may proceed. Good morning. May it please the Court, my name is Robert Hommel. I appear here on behalf of Kenny Ingram and Wiley Harrison. Orian Nelson is with me in the courtroom today, too. I would like to reserve several minutes for the end. In Gibson v. Casey, the Arizona Supreme Court recognized that duties may be found when they embody public policy. Last Friday, the Arizona Supreme Court explained that the primary sources for determining public policy are federal and state statutes. In Arizona, we have a statute, ARS 23-930, which makes it clear that a claim processing representative separate from an insurance carrier may be found to have acted in bad faith. In this case, that is an entirely appropriate result because we have a contract between RTW and the carrier in this case that says RTW has the total responsibility for investigation. At ER 615, it says they are responsible for making compensability determinations. And in this case, that's what happened. They are the one who decided to deny the claim. GAIC did nothing more than rubber stamp that. So the district court understood Arizona law to require something beyond the traditional TPA relationship. Do you think that was wrong, that Arizona law does not require something beyond the traditional TPA relationship? Or are you arguing that there is something here that's beyond the traditional TPA relationship? It — no, the TPA relationship is sufficient under the public policy. I think in reading Quiroz v. Alcoa last week, it made clear. I have been interpreting this under the — under Stanley that came out in 2004 when they said a sufficient relationship can be public policy. And I cite that language from Stanley at page 21 of the brief, which says we no longer require a formal relationship when public policy favors the recognition of duty. And then they go into what we call the Stanley factors, which basically are matters of control. But in looking at Quiroz v. Alcoa, at paragraph 15 of that decision last Friday, they say, unlike duties based on special relationships, duties based on public policy do not necessarily require preexisting relationships. So I think perhaps — The implied covenant — Pardon me? I think the whole theory of the implied covenant of good faith and fair dealing is based on a special relationship. Wouldn't you agree? It is based on a special relationship. So why does — why would some separate notion of public policy come into play here? Because that is the public policy of our legislature, number one, to recognize that claim processing can do that. And secondly, it supports the workers' compensation policy of this case. Workers' compensation demands that proper decisions get made so that injured workers, employees, can get benefits when they're needed immediately. And it's the processing representative that controls that outcome. But how do you square all this with Sparks, where it seemed to say, we require something more, we require a joint venture, at least the industry of a joint venture relationship and going down the factors? If the law had been as you've described it today in Arizona, there would be no need to do that because the claims processing entity would automatically be liable, right? Sparks was decided on the basis of joint and several liability. And so if you look at the factors that Sparks went into, they examined the relationship between the TPA and the carrier. ARS Section 930 and what we're arguing for today examines the relationship between the TPA and the insured. So that was a different basis. There's two bases to do it, on direct liability or on this joint venture. And that was a rather loosely defined joint venture in Sparks. Well, are you conceding that you don't have evidence here of a joint venture and the Sparks and FAR cases really don't assist you? No, not at all. We're not conceding. So you think there is a joint venture here? We do, Your Honor, but it is limited to the joint venture on the claim adjusting activities on the conduct. If we look at, go back to Stanley again, it says special relationships can be found under contract and conduct undertaken. And that comes from Stanley. That's cited in our brief too. And what the TPA does in this case is undertakes the duty of good faith. At ER 616, they say that they will manage claims consistent with state and federal laws and best practices within the industry, which is the covenant of good faith and fair dealing. So that is the special relationship that would qualify under a Stanley analysis because it's the sufficiency of the relationship, Your Honor, not the formality of the relationship. They have undertaken. And I think what happened here is the duty of good faith being non-delegable got misinterpreted to be an exclusive duty, and it should not be an exclusive duty. And that is shown in the statute and it's shown in our case law. I realize there is a dichotomy, that's the word I like to use, between jurisdictions on whether a TPA can be liable or not. And Arizona has always come down on the side that a TPA can be liable. They found it early on in Sparks using a joint and several liability. They continued that in Farr. Part of these significant facts in Farr were that both had decided to deny the claim. And in this case, RTW in its answer admits that they jointly denied this claim with GAIC. We alleged in paragraph 41, GAIC and RTW denied the claim. They admit that. So it was a joint undertaking. Well, I'm not entirely understanding. The RTW made a recommendation and the insurer then denied the claim. It seems a little different. Don't you need to satisfy either the joint venture requirements of Sparks or some sort of other, something more than what appears to be the facts here? Well, there's a couple. What did RTW do to create this special obligation directly to your client? All right. First of all, RTW had a contract that they were responsible for the investigation and for compensability determinations. And in making this recommendation, and please note that every time they say in their brief that they only made a recommendation that it was GAIC, they have no citation to the record for that. That is a disputed issue of fact in this case. Isn't the import of what you're arguing is that you'd always have a duty of good faith claim against the independent adjuster? Yes. In Arizona, you wish us to essentially hold, I gather, that you can always sue the adjuster for good faith, even if the adjuster is totally independent and without a joint venture. Yes, Your Honor. That is the direct liability theory that was espoused by the Arizona Supreme Court in Gatecliff. In that case — Well, but the Gatecliff case is totally different, is it not? Because that person was an employee of the insurer, and it seems to me that's totally different than a situation where you've got an independent adjusting agency over here that contracts with the insurer to go out and do the adjusting. Now, in Gatecliff, wasn't the person involved actually an employee of the insurer? In Gatecliff, the non-party to the contract was a subsidiary of the insurance carrier. But the operative facts, Your Honor, pointed out in Gatecliff is that there was a contract to manage claims, that the non-party hired the adjusters, and that the non-party actually adjusted the claims. That was the basis for finding the sufficient relationship for direct liability to a non-party. But wasn't the facts also that there was a unity of control between the parent and the subsidiary? So, for purposes of deciding whose employee, they considered them all together? Well, there is a unity of control here, too, Your Honor, because what the TPA did, they controlled all the information that went to the carrier. They directed this investigation to look for a deviation. They decided who was interviewed, who was not interviewed, and they said they controlled all the information that went to the carrier. So, are you arguing that as a matter of law, they are liable, or are you saying that there are issues of fact that still need to go to a jury here? Well, at a minimum, there are issues of fact, because what they did was completely control it. And in some cases, that is up for the trial court to decide. That determination has to be made first. But I think— And so, what is the fact dispute? I'm still not clear what you think the jury needs to decide here. What's disputed? What the extent of their control was in the denial, what the extent of their activity was, and what the extent of the activity was by the carrier to make this denial. Because RTW made the decision, and they controlled the entirety of the investigation. But if a jury were to find that GAIC did some investigation on its own, or had someone really look at the claim and make their own evaluation, then you would lose? No, because some investigation still gets us back to shared control, which is enough to have liability with the TPA. So I guess I'm back to being confused, because it seems like you are arguing that you win as a matter of law. I don't understand what you think the jury needs to decide, how a jury could decide something that would cause you to lose, because if there isn't such a thing, then you're not asking for a jury to decide anything. If the facts are such that GAIC did the enough control to let RTW off the hook, I suppose we could lose on that. But I do say that there is enough here for you to decide this as a matter of law on our part. Why isn't that just determined by the contract? Pardon me? Why isn't the issue of control determined by the contract? Well, I think it should be determined by the contract, and in this case, the contract says RTW has the responsibility to make compensability determinations. So if I understood your argument correctly, though, you believe that independent claims processers are liable under the statute in all circumstances. At least as that pertains to workers' compensation, because that's our state public policy under the statute, and that's where public policy comes from. Our legislature and our courts have always recognized, found a way that the party responsible But there is no case that states the proposition that you are urging today precisely in Arizona, is there? There is not, Your Honor, and there's not one against us either on that. Thank you, counsel. Anyone reserve? May it please the Court. My name is Justin Ackerman, and I represent RTW, Inc. I think the core confusion that Appellant is raising is a conflation of negligent principles and the duty of good faith and fair dealing, which solely arises out of contract. Arizona courts have clearly said in the Rawlings case from the Supreme Court that it can only arise by virtue of a contractual relationship and it's non-delegable. So to the extent he argues by merely performing administrative functions, that somehow the duty, the non-delegable duty of good faith has been transferred, Arizona courts have expressly said that that's not the case. The only circumstance in which courts have found that a third-party administrator may have a duty of good faith is where there is a joint venture. And in that narrow context, the Court is analogizing that a third-party administrator was in essence a party to the contract. So it is harmonized with the holding of Rawling, where it said that you must be a party to the contract in order to have a duty of good faith. For example, Sparks, the third-party administrator was a soliciting agent with the insurer. It marketed and administered the policy. It issued certificates of coverage, billed and collected premiums, handled the investigation, prepared the sales brochure that induced the insured to actually get the insurance. They actually made the brochures that were handed out at the local insurance office. In Farr, the TPA marketed the insurance policy again. The TPA collected premiums. They provided guidelines for the insurer. And they received a commission of the premiums collected and a percentage of the renewal commissions in that case. So in essence, you have this commingling between the TPA and the insurer such that they stand in the same shoes for purposes of being a party to the contract. Gatecliff can actually be harmonized with that as well. In that case, you have a — and I do think the facts are slightly different than what's being represented in this court. The non-party to the contract was actually the parent corporation, not the subsidiary. It was the subsidiary that actually entered into the insurance contract. And so the whole issue is whether you could hold the parent corp liable for a duty of good faith even though it wasn't a party to the contract. And like joint venture, the court analyzed how closely the parties were related in terms of what they were doing with respect to their duties. In that case, the parent corporation in Gatecliff hired the claims adjusters and managed the claim office. It determined insurer's eligibility, benefits, and premiums for coverage on policies. The service letter that was sent to the insured indicated that it was responsible, the parent corp, for the service and had the ability to cancel the insurance plan at any point in time. So, I mean, Gatecliff is just really an offspring of Sparks and Farr, which says you must have this commingling where you're standing in the same shoes and, therefore, you are a party to the contract. So contractual privity is still the bedrock of the duty of good faith in Arizona. There's no case that's held otherwise. Well, in this case, the RTW marketed itself saying it had an ability to reduce costs by denying claims and it could do it faster and cheaper. And at some point down that road, isn't there a good faith kind of claim that someone could bring? I mean, if the adjuster is out there, totally independent, but is operating under the rules of denying everything we can to reduce costs, even when it's not an appropriate claim, shouldn't there be a claim of good faith against that adjuster? Perhaps in some case, but not in this one. I take two issues with your question. One, the marketing materials, I don't think, are in this record before this Court. They were submitted in response to GAIAC's motion for summary judgment. They were not submitted in response to RTW's motion for summary judgment. Although the trial court considered that. I think the order refers to it, does it not? It did, and I don't think it should have. Your aid at page four refers to these representations or marketing tools, if you will. Sure, and I think it was improper for the trial court to even refer to them, but to the merits on them. One, they did not advertise that they would deny claims, they advertised that they would close claims faster, which could be paying out meritorious claims. And lower costs. Which again, could be paying out meritorious claims, and lowering costs in the insurance context could be a variety of things. It could be pencils, it could be stationary employees, salaries, it could be a variety of things. It's not just premiums and paying out claims. So the fact that they could close claims faster because they are more efficient or any other reason is not evidence that there's some sort of joint venture. And in addition to that, those marketing materials are from 2007, and there's no evidence that they were in effect at the relevant time, or that they actually induced GAIAC to purchase the contract. There's simply no foundation for that marketing presentation that was ever presented to the trial court. And I would back up and say, plaintiffs asked for Rule 56D relief in order to brief this very issue. They had every opportunity to conduct a Rule 30b-6 deposition of any of the agents from GAIAC or RTW to actually hammer down these facts, who, what, when, why this contract was performed and formulated, and what the duties, respective duties of the companies were, and none of that evidence was developed for this court. So I take issue that there's any reason for facts to be developed when they had every opportunity to do so in this case, and failed to do so. Can you clarify one fact for me? Sure. You've said at your briefs that it was actually the insurer who made the decision to deny coverage. And I'm not sure, in looking at the citation on the record, that I'm, if I have the right one. Can you explain, even, you don't need to necessarily refer to the record, but can you explain to me what the evidence was on that? Sure. There's a particular email that appears in a variety of contexts throughout the record. I have right before me ER 275, which is the TPA update where the adjuster, Chris Wignett, was requesting that she was informing GAYAC that she would like to file a denial on these claims. And then she sets forth her reasoning for all that. Right. I see that. And then the follow-up email says, denial approved, and that's from GAYAC, and — Which one? No, who is that from? Is that the Angela, Angie Wilson? Yes. Yes. And that's from GAYAC. And that's ER 274, just for the Court's record. And it says, upon review of the investigation and the various rulings provided by Defense Counsel, agree with denial. To me, that clearly shows that GAYAC reviewed everything that they had been provided and made its determination to deny it. Well, that was what puzzled me because it says approved denial, not denial. Well, you have someone recommending something and then they approve it. I mean, that to me is making the final determination. I mean, they're the decision holder. No, usually you would have an insurer saying, we deny the claim, independently of anything the claims adjuster would say. You don't say, I approve what you're doing. Well, and if the Court's going to look at the contract between RTW and GAYAC, it does — GAYAC does have authority at certain thresholds to — No, I understand that. I just — in looking at the record, it would puzzle me because that's all I saw. Is that the extent of the record that's developed on this? Other than that, there is a deposition testimony from Ms. Wignett where she specifically says, I wanted to make the recommendation for them to deny it, and it was their decision. And I can provide you the — No, that's fine. I can look at it. Is this a fact dispute that needs to be resolved, though? So, I mean, say a jury could look at this and decide that actually the insurer did not make its own decision or do any investigation. They just accepted the — and they always just accepted the recommendation. Would you lose then? Absolutely not. Yeah, I mean, I think you have to show the elements of joint venture to even get to that issue. And they haven't shown them. If you have an insurer who instructs a claims adjuster to deny the claim and the insurer doesn't act independently, then you may have some other issues. Can you rephrase that question? I'm sorry. Well, it does matter who denies the claim. And if the claims adjuster is denying the claim essentially on the — whatever authority has been delegated, that arguably brings you within the claims processing statute. Well, I take issue with the statute, again, because it was not cited in any way, shape or form underlying the case. No, but the whole theory generally of the implied covenant of good faith affair dealing, as you said, it arises out of contract, but it's subject to generally the Unfair Trade Practices Act that exists in almost every jurisdiction. And it focuses on claims processing. So if the claims processor, the adjuster, has assumed all of the duties for claims processing, then arguably there's a cause of action there that's independent of all these things. Well, I would say no — So I'm explaining to you why I think it matters, and I'm asking you what the state of the record is. The state of the record is that they made the recommendation and then GAIAC approved the denial. And who actually made the denial? I believe it was GAIAC. Do you know? I do not know for sure, because it's not in the record. With regard to the statute that they cited, I did file a Rule 58J letter with the court that specifically said that 20-461, which is the primary provision of Arizona's Unfair Claims Settlement Practices Act, specifically said that the act's not intended to provide any private right or cause of action. On behalf of the assured — so I think that cuts against their argument that that statute provides it. In addition, the Hayes v. Continental case specifically, I would say, rejected the fact that that statute supplements the common law of bad faith in Arizona. The issue in that case was whether the court would adopt that particular statute as the sole basis for bringing a bad faith claim. And in rejecting it, it specifically noted that that is its own unique provision. The courts are not looking to it in terms of a bad faith common law case. And it noted several differences in it, specifically that the statute provides significantly less damages than normal bad faith would. It also noted that the only person who can bring it is the administrative component of it. It's not an individual. So it significantly distinguished that particular statute in terms of its public policy reasoning and I don't think it creates in any way a duty in this case for a third-party administrator. And as you've noted, no court has ever cited this as a basis to implore a duty to a third-party administrator whatsoever. You've used the term bad faith, but my understanding of Arizona law is that there's no separate tort of bad faith. There's only implied covenant of good faith and fair dealing. I apologize for the confusion. No, I know, because some jurisdictions have a difference in that, and I just wanted to confirm my understanding. There's no separate tort. Is there? So far as I'm aware, a breach of the duty of good faith and fair dealing is the same. I would also note that there's public policy considerations for why this court should not impose a duty that no Arizona court has ever recognized. First, the Meineke case has recognized that under a negligence claim, there is no duty whatsoever. And its reasoning for that is that the relationship is sufficiently attenuated between a third-party administrator and an insured, that it's just not valid to do so. It also recognized that you risk double recovery because you're suing the insurer in this case, which was Gayek, who had settled in this case, and the third-party administrator for this same exact harm. And third, it recognized the Miele case, which is again in my supplement, that Arizona courts just do not recognize a duty to an insurer in a negligence case. So the extent that they cite negligent cases, negligent cases involving a negligence claim, which includes their most recent one from the Arizona Supreme Court that was just this last Friday, I think they're an opposite because they're only dealing with a negligence claim, not a bad faith or, I'm sorry, a breach of a duty of good faith. So if we agree with you that you need a joint venture, so we're looking at Sparks and Farr, how do we know, looking at Sparks and Farr, that all of the facts that existed in Sparks and Farr were necessary to the joint venture? I mean, it seems like you want us to read those as when they list the facts, they mean that to be the entirety of the legal test and all of it is an element that needs to be satisfied. And I don't know if we can read it that way. It's not really clear that all those facts were necessary. I agree you can't. I mean, Sparks and Farr clearly say these are not the universe of things that can be considered, but they're the only cases in Arizona that provide any guidance. And so I think, although they're not the universe, they are persuasive to look at those factors and none of them are meant here. None. Not a single one. RTW didn't have a joint venture agreement. RTW didn't have joint ownership over GAIC's assets. It didn't maintain joint bank accounts or any sort of joint co-ownership of employees or facilities. It didn't have an agreement that profits and losses would be shared. It didn't control GAIC whatsoever. It didn't advertise, market, or sell to an insurer. It did not receive commission on GAIC's collected premiums. It didn't issue certificates of coverage for GAIC. It didn't solicit or induce in any way M3, which is the workman's comp employer, to purchase this workman's comp agreement. Did the contract have an indemnification clause? I'm not aware that it did. I see that I'm almost out of time. If the Court has any other questions. Any further questions? Thank you, Counsel. Thank you. Thank you. Gatecliff answers one of our earlier questions. If we were to accept the argument and adhere to the general rule that bad faith liability may be imposed only against a party to the insurance contract, we would also deprive the plaintiff from redress against the party primarily responsible for damages. That's the public policy and common law of our Supreme Court. I'd like to go to the Statute 2461 that my opponent mentioned because that makes the point for me. That statute deals with the Unfair Claims Processing Act. And in that case, the legislature knew how to limit its application. It says, this Unfair Claims Processing Act will not create civil liabilities. They didn't do that with 23930. There is nothing limiting the application of the statute in that. It says claim process, they shall be liable. Not only that, but the Unfair Claim Processing Act is, discusses liability between a carrier and the Department of Insurance. 930 discusses liability between the claim administrators and the insured. The final thing I'd like to mention is, we kind of had this problem in Sanley. There was no duty because there wasn't a doctor-patient relationship. That's the only way that duty could arise. And the court in that case said, we are not going to require formal relationships when there is a sufficient relationship. That was the policy again. I think Arizona has always been on the side of the TPA liability through one method or another. Thank you, counsel. Thank you. Thank you both for your arguments today. The case just argued will be submitted for decision.
judges: Thomas, Friedland, Zilly